Jared L. Inouye (9776)
Joshua L. Lee (11701)
Jarom R. Jones (16077)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: jinouye@btjd.com; jjones@btjd.com; jlee@btjd.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MOXIE PEST CONTROL (UTAH), LLC, a Utah limited liability company; MOXIE PEST CONTROL (MARYLAND), LLC, a Maryland limited liability company; MOXIE PEST CONTROL (COLUMBUS), LLC, an Ohio limited liability company; and MOXIE PEST SERVICES – DALLAS, LLC, a Texas limited liability company; <br><br> Plaintiffs, <br><br> vs. <br><br> KYLE NIELSEN, an individual; APTIVE ENVIRONMENTAL, LLC, a Utah limited liability company; and DOES 1-10, <br><br> Defendants. | **COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** <br><br><br> Case No. 2:21-CV-00240-DAO <br><br> Judge Daphne A. Oberg |

Plaintiffs Moxie Pest Control (Utah), LLC, Moxie Pest Control (Maryland), LLC,

Moxie Pest Control (Columbus), LLC, and Moxie Pest Services – Dallas, LLC (collectively

referred to herein as "*Moxie*"), through counsel hereby submit this complaint against Kyle Nielsen ("*Nielsen*"), Aptive Environmental, LLC ("*Aptive*"), and DOES 1-10.

## PARTIES, JURISDICTION, AND VENUE

1. Moxie Pest Control (Utah), LLC is a Utah limited liability company with its principal place of business located in Murray, Utah. Moxie Pest Control (Maryland), LLC is a Maryland limited liability company that conducts business in Maryland and Utah. <pxoe Pest Control (Columbus), LLC is an Ohio limited liability company that conducts business in Ohio and Utah. Moxie Pest Services – Dallas, LLC is a Texas limited liability company that conducts business in Texas and Utah.

2. Upon information and belief, Nielsen is a natural person who is domiciled in and resides in Utah County, Utah. Nielsen's is Aptive's President of Sales, and initiated and conducted the wrongful actions alleged below.

3. Upon information and belief, Aptive is a limited liability company with its principal place of business located in Provo, Utah. Aptive directly benefitted and profited from the wrongful actions alleged below.

4. Defendants, DOES 1 through 10, on information and belief, are employees or associates of the other named Defendants who participated in the wrongful action alleged below, and who may be later specifically identified as parties in this action. Nielsen, Aptive, and DOES 1-10 may be referred to herein individually as "*Defendant*" or collectively as "*Defendants*".

## JURISDICTION AND VENUE

5. This is an action under 18 U.S.C. § 1030 for violation of the Computer Fraud and Abuse Act and 18 U.S.C. §§ 1836 *et seq.* for violation of the Defend Trade Secrets Act. In addition, this is an action for unfair competition under Utah Code Ann. §§ 13-5a-101 *et seq.*

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) over the claims for violation of the Computer Fraud and Abuse Act and the Defend Trade Secrets Act. This Court has jurisdiction over the state law causes of action under 28 U.S.C. § 1367 (supplemental jurisdiction) because such claims are related and form part of the same case or controversy.

7. This Court has personal jurisdiction over Defendants because they reside and conduct business in this judicial district and because the alleged wrongful actions occurred in this judicial district.

8. Venue properly lies in this Court under 28 U.S.C. § 1391(b) because all of the acts/subject matter on which the claims are based occurred in this judicial district and because Defendants either reside or are found in this judicial district.

## GENERAL ALLEGATIONS

### *Moxie's Business*

9. Moxie provides pest control products and services throughout the United States and uses door-to-door sales to market its products and services.

10. Moxie and its affiliates contract with affiliate and non-affiliate companies ("*Sales Companies*"), who in turn, contract with sales representatives to market Moxie's pest control products and services throughout the continental United States. Both the pest control industry and the summer sales industry are highly competitive industries.

11. While Moxie provides its pest control services all year, it primarily operates its door-to-door sales program from April through August each year. In the six months preceding April (from October to March), Moxie and affiliated companies (collectively, "*Moxie Companies*") expend significant resources and efforts on recruiting sales representatives for their door-to-door sales program. A substantial portion of Moxie's recruiting occurs in Utah.

12. During the 2021 sales season, door-to-door sales representatives contract to sell pest control products and services offered by Moxie Companies in up to 28 locations in 16 states. To organize and facilitate its sales program, Moxie utilizes a software platform called "*PestRoutes*." All Moxie Companies use or have access PestRoutes.

13. Within the PestRoutes platform is an app called "*SalesRoutes*." Moxie gives sales representatives credentials to access SalesRoutes to input and view their and others' sales data and performance metrics.

14. Sales representatives rely on SalesRoutes to manage and view their own performance. In addition, Moxie and other Moxie Companies utilize SalesRoutes to motivate and monitor sales representatives and sales data.

15. A person with SalesRoutes credentials can see his or her sales performance-related information. In addition, he or she can see the number and amount of sales made by other sales representatives participating in the Moxie summer sales program on a page often referred to as a "*Leaderboard*." The Leaderboard lists number of sales made by many Moxie sales representatives, the total sales revenue per representative, average contract value, and other performance-related metrics.

16. SalesRoutes contains information, including the Leaderboard and all information relative to a sales representative's performance, that is not available to the public or ascertainable to the public. Moxie considers this information confidential, proprietary and deserving of trade secret protection. This information is highly sensitive business information that, if disclosed, would harm Moxie's efforts to recruit sales representatives and sell its products and services. Therefore, any person given credentials to access and use SalesRoutes is required to sign an agreement requiring the person to (i) keep all information contained in or accessed by SalesRoutes confidential and (ii) not reveal or disclose any SalesRoutes information to any third party.

### *Moxie Discovers Data Breach*

17. In January 2021, Moxie learned that individuals employed by Aptive had access to a Moxie SalesRoutes account and were using and distributing confidential Moxie information to compete with Moxie.

18. Aptive is a large competitor of Moxie's with operations in over 25 states. Moxie and Aptive compete to (i) provide pest control services and products to customers,

and (ii) recruit and hire sales representatives to market their products and services by door-to-door sales.

19. Nielsen is Aptive's President of Sales.

20. Once Moxie learned that unknown individuals at Aptive had access to a Moxie SalesRoutes account, which contained confidential and proprietary information, and were actively using and distributing such information to compete against Moxie, Moxie immediately began an investigation to determine (1) how these individuals gained access to SalesRoutes and (2) the extent and scope of the data breach.

21. After an extensive and expensive investigation that included interviewing employees and other persons who were aware of the data breach, retaining outside legal counsel, conducting data analysis and IT forensic investigations, implementing steps to mitigate unauthorized access, holding meetings with SalesRoutes representatives, and filing an investigatory John Doe lawsuit, Moxie discovered that Nielsen was a primary actor in committing the data breach and theft of proprietary information.

### *Defendants Intentionally Access Moxie's SalesRoutes Account*

22. Defendants obtained access to Moxie's SalesRoutes account through Cayden Johnson ("*Johnson*"), who worked for Aptive in 2019.

23. In October 2020, Nielsen and Johnson met at Aptive's headquarters.

24. At that meeting, Nielsen told Johnson that he would compensate Johnson in exchange for access to Moxie's proprietary and confidential sales information.

25. In or around December 2020, Johnson executed all Moxie documents necessary (including standard confidentiality agreements) to become a Moxie sales representative.

26. In or around January 2021, Johnson obtained login credentials for, and access to, SalesRoutes.

27. In January 2021, Johnson gave Nielsen his SalesRoutes login information.

28. Nielsen did not, at any time during the relevant time period, have authorization to access Moxie's information on or through Johnson's SalesRoutes account; nor did Nielsen, at any time, have authorization to use Johnson's login credentials to access SalesRoutes.

29. On information and belief, Nielsen was fully aware of (i) the extremely sensitive and confidential information contained in SalesRoutes and (ii) the value of such information when competing against Moxie and Moxie Companies for sales representatives.

30. On information and belief, Nielsen repeatedly accessed Moxie's confidential and proprietary information by fraudulently using Johnson's SalesRoutes login credentials.

31. On information and belief, Nielsen stole and stored Moxie's confidential and proprietary information by using a screen recording application to record his commands and browsing history after he used Johnson's SalesRoutes login credentials to access Moxie's confidential and proprietary information.

32. On information and belief, Nielsen distributed Moxie's confidential and proprietary sales information to Aptive.

33. On information and belief, Aptive used and distributed Moxie's confidential and proprietary sales information to its sales representatives so that they could compete against Moxie.

34. On information and belief, Moxie's confidential and proprietary sales information—information that Nielsen wrongfully obtained, and information that Aptive knew Nielsen wrongfully obtained—has been widely used in the Aptive sales organization and is presently being used to recruit sales representatives, including representatives currently contracted to sell for Moxie Companies during the 2021 summer sales program.

35. On information and belief, when Nielsen discovered that Moxie had discovered his unauthorized and harmful actions, he told Johnson to destroy evidence of their interactions, including deleting any and all text messages between the two of them. Johnson followed Nielsen's instructions and destroyed evidence of their communications on his mobile phone.

## FIRST CAUSE OF ACTION
### (Violation of 18 U.S.C. § 1030 – Computer Fraud and Abuse Act)

36. Moxie hereby incorporates by reference the allegations set forth above as if fully set forth herein.

37. Nielsen intentionally accessed a computer without authorization. Aptive, through Nielsen, intentionally accessed a computer without authorization. Specifically, using Johnson's SalesRoutes login credentials without authorization, Nielsen and Aptive

intentionally accessed PestRoutes' computers to view and steal Moxie confidential and proprietary information.

38. PestRoutes' computers are used in and affect interstate commerce or communication.

39. Moxie has suffered damage and loss by reason of Nielsen and Aptive's intentional and unauthorized access. Defendants' unauthorized access has caused Moxie damage and loss in an amount exceeding $5,000.

40. Moxie is entitled to maintain a civil action against Nielsen and Aptive to obtain compensatory damages and injunctive relief or other equitable relief.

## SECOND CAUSE OF ACTION
**(Violation of Utah Code Ann. §§ 13-5a-101 et seq. – Unfair Competition)**

41. Moxie hereby incorporates by reference the allegations set forth above as if fully set forth herein.

42. Defendants intentionally accessed a computer without authorization.

43. Defendants intentionally and recklessly defrauded Moxie by (a) hiring Johnson to obtain a SalesRoutes login, (b) using Johnson's SalesRoutes login without authorization to access Moxie's confidential and proprietary information, which was stored on a computer, and (c) stealing, storing, using, and distributing Moxie's confidential and proprietary information.

44. Defendants intentionally and recklessly caused damage and disruption to Moxie by (a) hiring Johnson to obtain a SalesRoutes login, (b) using Johnson's SalesRoutes

login without authorization to access Moxie's confidential and proprietary information, which was stored on a computer, and (c) stealing, storing, using, and distributing Moxie's confidential and proprietary information.

45. Defendants' successful efforts to steal, store, use, and distribute Moxie's proprietary and confidential information has materially diminished the value of Moxie's confidential and proprietary information.

46. Defendants' successful efforts to steal, store, use, and distribute Moxie's proprietary and confidential information has damaged Moxie's business.

## THIRD CAUSE OF ACTION
### (Violation of 18 U.S.C. § 1836 et seq. – Defend Trade Secrets Act)

47. Moxie hereby incorporates by reference the allegations set forth above as if fully set forth herein.

48. As set forth above, Moxie's information related to the sales performance of its representatives is critical to the success of its business. This information includes, without limitation, all forms and types of Moxie's financial, business, technical, and economic information. Moxie utilizes this information to recruit sales representatives, structure compensation and sell products throughout the United States.

49. Moxie's information derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

50. Moxie has taken steps and made efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets by, among other things, requiring employees to enter into written confidentiality agreements, and limiting the individuals to whom their trade secrets were disclosed from accessing Moxie's confidential information. Further, Moxie maintains security measures to limit access to its confidential information and trade secrets by requiring password protected login credentials to access SalesRoutes and PestRoutes. Moxie assigns unique login credentials to each of its representatives.

51. Defendants acquired Moxie's trade secrets with knowledge or reason to know that the trade secrets were acquired by improper means—theft, bribery, misrepresentation, and espionage through electronic or other means.

52. Defendants disclosed and used Moxie's trade secrets without Moxie's consent, knowing that Nielsen had used improper means to acquire Moxie's trade secrets.

53. Defendants disclosed and used Moxie's trade secrets, knowing and having reason to know that their acquisition of Moxie's trade secrets was derived from or through Nielsen who had used improper means to acquire the trade secret.

54. Defendants' actions have caused and will continue to cause damage to Moxie and, unless restrained, will further damage Moxie, the nature and extent of which may not be able to be proved with certainty, irreparably injuring Moxie, leaving it without a remedy at law.

55. Moxie is entitled to damages as a result of Defendants' misappropriation and/or violation of the Defend Trade Secrets Act, to the extent its actual losses are calculable.

56. Defendants' misappropriation of Moxie's trade secrets was willful and malicious, entitling Moxie, on information and belief, to exemplary and/or punitive damages.

57. Preliminary and permanent injunctive relief is necessary to prevent irreparable harm and further disclosure of Moxie's trade secrets.

58. Moxie is entitled to any unjust enrichment obtained by Defendants' misappropriation of Moxie's trade secrets and/or violation of the Defend Trade Secrets Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Moxie prays for judgment against Defendants' as follows:

1. Judgment finding Defendants jointly and severally liable to Plaintiffs on each of Plaintiffs' alleged claims for relief;

2. Enjoining each Defendant, and all other persons participating or acting in concert with them, from misappropriation of or otherwise using Moxie's trade secrets, including use of Moxie's trade secrets and proprietary and confidential information to compete against Moxie;

3. Ordering each Defendant to surrender to the Court or to Moxie all copies of Moxie's confidential information and/or trade secrets, including but not limited to all

information acquired by or through Nielsen from PestRoutes using Johnson's login credentials;

4. Ordering each Defendant to prepare an accounting of all individuals or entities to whom he/it disclosed Moxie's confidential information and/or trade secrets;

5. Ordering each Defendant to file with this Court and serve on Moxie within thirty (30) days after service on the Defendants of the injunction, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction and order of the Court;

6. Awarding Moxie damages for actual loss caused by Defendants' violations of the Computer Fraud and Abuse Act, the Defend Trade Secrets Act, and their unfair competition;

7. Awarding Moxie enhanced damages as permitted by applicable statutes;

8. Awarding Moxie punitive damages as permitted by applicable statutes;

9. Awarding Moxie its attorneys' fees and other costs of bringing this action;

10. Awarding Moxie pre-judgment and post-judgment interest until such awards are paid;

11. Awarding Moxie such other and further relief as is just and equitable.

DATED this 19th day of April, 2021.

BENNETT TUELLER JOHNSON & DEERE

By: /s/ Jared L. Inouye
*Attorneys for Plaintiffs*